Williams v SCI Greene et al 22-2053 and 22-2076. Council. Good morning. My name is Brian Dieterich. I'm here on behalf of the District Attorney of Lebanon County. I would respectfully request three minutes for rebuttal. Sure. Thank you. Mr. Dieterich, were you in the DA's office when the events unfolded that give rise to the claims that are with us now? I was not. Oh, dear. Well, I was in the public defender's office at the time. The court has framed two issues that you would like us to address here today. Respectfully, I would suggest that Bruton does not apply. Bruton is, in our position, is a narrow ruling that addresses out-of-court statements by co-defendants, confessions and such. This was something different. This was a Bruton scenario where you have this information read to the jury not once but twice, where the judge reads the charging document, including conspiracy, aiding and abetting charges, and mentions Mr. Williams. That was what took place. How is that not Bruton? Well, because, again, Bruton is directed towards confessions, towards truly out-of-court statements. And even if the court adopts the position that it guilty... Confessions only? Yes, but this is not a confession in custodial interrogation. This is raising your right hand, swearing to tell the truth and admitting to the factual basis of the charges. Does it require custodial interrogation? No, but all of the Bruton cases, the vast majority of those Bruton cases are directed towards confession and towards inculpatory statements of co-defendants out-of-court. This is a slight distinction, and I understand the court's position that, as I'm understanding it, you're finding it to be a distinction without a difference. Well, it's a conspiracy. It's an admission to a conspiracy. It's an out-of-court statement. It is, however, if Mr. Cannon would have entered a guilty plea at trial, it would have been still a guilty plea to the conspiracies. But if Mr. Cannon had entered a guilty plea at trial, I can't imagine the judge would have let the jury sit through this colloquy. No, he wouldn't have. So, and again... The same judge presided at both the Williams trial and at the plea proceeding involving Mr. Cannon. That is correct, because they... And, of course, the plea proceeding involving Cannon occurred first. That is correct. So the judge knew what Cannon had pled guilty to and knew the role that Cannon had pled he had taken in these criminal events. Was there a difference in what Cannon pleaded to as his role and what Williams was charged in his information with having done? They were both charged as... All three were charged as co-conspirators. They were charged as both principal and as accomplice. In both informations? In all three informations, yes. And, of course, how this whole thing began during an opening statement was with Mr. Fenton arguing that the real shooter was not Mr. Williams. It was Mr. Cannon. He makes a statement to the effect, in fact, the testimony is he wrote down on a piece of paper under oath, yes, I killed that man. Did that piece of paper show up in the record anywhere? Is there any reference anyplace else that Mr. Cannon actually said, I killed that man? It is filed of record as the guilty plea colloquy, which this court asks that we supplement the record and provide. I read the guilty plea colloquy. I don't remember seeing those words, I killed that man. It does not appear specifically. Right. The issue here is that the evidence of guilt, however, was so overwhelming. Attorney Fenton. Well, we'll get to that, but there's so much leading up to all of that. You know, a curiosity to me here, and you were in the trial, in fact, you were, I'm sure you would say, working for the good guys back at that time. At all events, you had no role in the DA's office, no role in this case. Correct. But it seemed to me that while etiquette has always suggested to those of us who have tried cases that you try not to interrupt either an opening statement or a closing argument. There are times when something is so egregious that you just have to do it. And here, what Mr. Fenton did was to introduce what was blatant hearsay, wasn't it? In fact, as you've just conceded, it was not only blatant hearsay. Yes, I did it. That's an out-of-court statement offered to prove the truth of the matter asserted. It's not even supported anywhere on the record. Wouldn't the appropriate thing have been for the district attorney to immediately object, go to sidebar and ask for a ruling and an instruction at that point? Wouldn't that have been certainly the much better course to have taken than what was done here? Using pure 20-20 hindsight, absolutely. How about impure 20-20 hindsight? Impure, I think the issue becomes that a jury trial, argument to a jury, presentation of openings is a quickly evolving and changing playing field. The issue is... Well, I tell you, I didn't notice that pretty quickly. And I was a DA, a county DA. I mean, this is blatant. And everybody knew it. The district attorney knew it because he prosecuted. Well, and the issue is third-party culpability is part and parcel of defense counsel. You love to have the opportunity to say, this is the person that did it, not my client. My client didn't do it. And if you look at the evidence in the record in its entirety... When you decide you're going to do it. Well, and the issue here was that ultimately, Mr. Williams, Defendant Williams, wanted to point the finger at Defendant Cannon. His testimony was crafted in a way to say it was this guy. His statements in his testimonial statements were, you know, I came out of the apartment. I was on my phone. I heard the shots, which flew in the face of the vast amount of evidence that was presented. The problem is, is that Attorney Fenton was frankly in the position of Sisyphus, pushing the boulder up the hill of reasonable doubt, only with witness and evidence after piece of evidence, pushing it back down on him. He had no choice but to say it was Rick Cannon. And the fact that Rick Cannon had entered a guilty plea to these exact charges actually was the one thing that supported his client's argument. But the Commonwealth wanted Cannon as a witness, right? I believe that is correct. That was correct. And in fact, it would seem that although he got a really stiff sentence, it would seem that what he did get in return was a reduction from murder one to murder three in his plea. Because the evidence... What happened to him? He couldn't show up to testify at the Williams prosecution because he was appealing. Is that right? That is correct. And what happened to Mr. Cannon? Mr. Cannon's... And the appeal? Ultimately, his appeal was denied. It was found that... My recollection is that his guilty plea was found to be intelligent, knowing, and voluntarily entered into. So he presumably, given the length of sentence that we saw was going to be imposed, he is presumably incarcerated at this time pursuant to the sentence. Correct. Frankly, I have not checked on his whereabouts or if he is deceased or not. Let me go back to the information or the charging document that references Eddie Williams by name no less than nine times as a conspirator and references aiding and abetting in the balance of the charges. So there's like 17 references read to the jury, not once but twice. Explain to me again how that's not testimonial. It's a fact in evidence. It is not testimonial. Obviously, District Attorney Arnold could argue that there wasn't any information or testimony presented as to the circumstances of that plea. Certainly, Attorney Fenton could have called Mr. Cannon's attorney to testify relative not to discussions, but what the entry of a guilty plea is. What if he's not testimonial? The defendant, acting as a principal or accomplice with the intent of promoting or facilitating the commission of a crime, did agree with Eddie Williams. To engage in conduct, fire a gun, striking or teasing with a bullet. How is that not testimonial? And that's where extending Bruton passed a confession to extend to this. It does become testimonial. What was the purpose of the trial judge reading for the benefit of the jury the content of the Cannon information? I again, putting myself in the chair of Judge Klein, I can only assume that the benefit was that Attorney Fenton had brought this to light. Mr. Cannon, his role, his guilty plea, his sentencing was not mentioned. It was alluded to as this third person that the Commonwealth had refused to identify, had refused to talk about. And the court was attempting to make it plain to the 12 folks in the jury that this co-defendant had, as Attorney Fenton had alluded to in his opening, had actually pled guilty and said, I am guilty of these crimes. It is directly in response to what was testimonial on the part of Mr. Fenton in his opening statement when he says, yes, I killed that man. He's quoting Mr. Mr. Cannon. I don't believe that testimony. No, it's oratorial flair that how often do defense attorneys and prosecutors make statements that sort of push the line, that extend what the true facts are. He knew he was never going to be able to get Mr. Cannon on that witness stand to say that. So he said it. Correct. That's hearsay. It's part of argument. It is not part of. Opening statements are not argument. They are to tell the jury, as we all know, what they can expect to hear. They are anything but argument. And this jury could not expect to hear this. And Mr. Fenton knew this jury could not expect to hear this because he didn't have this witness in his arsenal. But what he did have was his client who was going to get on the stand and say, Rick Cannon killed that man. Rick Cannon shot that other man in the face of insurmountable evidence. To the contrary, Eddie Williams was prepared to get on the stand. And I would trust that a practiced attorney such as Mr. Fenton, Attorney Fenton, would know what his his client wished to do in advance. Eddie Williams was never going to get on the stand and say, and I conspired with him to kill the man. No, his defense was that this was Rick Cannon. It was entirely Rick Cannon. He wasn't there at his car and make a phone call while the when the shooting took place. That's that's the essence of what he said, right? Correct. Which was a bald face lie. All of the evidence pointed to otherwise. Sorry, I see my time. Thank you. Morning, Mr. Good morning, Your Honors. May it please the court, Michael Wiseman for Mr. Williams. It was an oratorical flair. It was a lie. And when a lawyer engages in untruths such as what Mr. Fenton did, it's deficient performance. And that's the Nixvy-Whiteside case. Well, and Mr. Fenton, during the PCRA proceedings, did candidly indicate that while he thought that this measure taken by the trial judge in response to his incorrect statements in opening that that opening was appropriate. He had second thoughts. Well, he had second thoughts. But I think more significantly, he indicated that he should have moved for a redaction of his client's name from the information. If I could just jump to the. That's why he had second thoughts. Well, yes. I mean, he may have had second thoughts about the whole thing, but that in particular, Bruton, of course, applies. Crawford says the guilty pleas, colloquies are testimonial in this case. And of course, the Hemphill case, which came out while we were briefing in the district court, is right on point. The only distinction that the Commonwealth has tried to make here is to say this wasn't a colloquy. This was just the information. However, what my colleague has not mentioned to the court is that the trial court prefaced the reading of the information by telling the jury, this is what Mr. Cannon did. All right. So that takes it from the realm of just being an information to being testimonial here. So was the judge actually transformed into a witness here or to put it another way? Or was the judge testifying here when he read the information? You know, I'm reluctant to try to characterize what all that was because I've never seen anything like it. I've never seen anything like it. Except for Hemphill, where, of course, the prosecution, when it got to the Supreme Court, acknowledged that it violated Bruton and his progeny. There's nothing wrong with third party culpability defenses, but they have to be done within the rules. And it has to be done with proper evidence. You can't do it by making stuff up and then curing it with this blatant hearsay. In answer to your question, Judge Smith, the reason Judge Klein read the information, his motivation was, as he put it, to clear the air and to tell the jury exactly what Mr. Williams, sorry, what Mr. Cannon did. That was his reason. There's, you know, there's no need to speculate about that. He said it. Mr. Cannon is still alive. There was some mention in the record that he had a terminal illness. I checked this week and he's still in DOC custody, for whatever that's worth in the court. So getting to deficient performance, I've already touched upon the Nixby-White side case. You can't lie as part of your advocacy. That's not allowed. And doing so when it causes harm is deficient performance. I think, Judge Smith, you've already hit on the contemporaneous objection. I mean, I certainly appreciate the need for collegial interactions before a jury. But when something like that, if it happened in reverse, I certainly would have been on my feet. And any reasonable lawyer, more importantly, would have been. Why don't we get to this harmless error issue? I'm sorry? Can we get to the harmless error issue? Was it harmless? No. Just for clarity, when we talk about harmless error, I'm going to mix that in with Strickland prejudice because they're really the same standard as I pointed out in my brief. Did the PCRA court address prejudice? I'm sorry, Your Honor? Did the PCRA court address prejudice? Not, not. Well, yes. I mean, he didn't call it prejudice, but the PCRA court had three reasons for not granting relief on this Bruton violation. And the one that relates to prejudice is he said that the information interlocked, essentially, with Mr. Cannon's testimony. And, of course, as I pointed out in my brief, Cruz v. New York says that when confessions, the out-of-court statement interlocks, that makes it more harmful, not less. So that was an unreasonable application of Bruton and its progeny. The other point that Judge Klein made is that Mr. Crawford, this is very confusing with the names. You have a Crawford issue and a victim named Crawford. Mr. Crawford identified Mr. Williams as the man who shot him. And, of course, there's a section in my brief that shows that was not possible for him to have seen that because of the DNA evidence in the case. And just in a nutshell, the DNA evidence showed Mr. Ortiz, the deceased victim's DNA, inside the barrel of the gun. The expert explained that meant that the last time that gun was fired and the same gun was used in both shootings. Let's go over the quantity and perhaps the quality as well of the evidence pointing to Mr. Williams. And I know that Mr. Diderich had tried to reach, to get into that, and I interrupted him because I wanted to pursue something else. But I will certainly give him an opportunity on rebuttal to address that. But how about if you address it? It seems to me that there was considerable evidence that pointed to Mr. Williams. And we ought to discuss that, starting with the police officer who's quickly on the scene and who has video. While it may not be of such resolution that Mr. Williams could be identified, it was of sufficient accuracy that he could see people departing the vehicle, going separate ways. And the direction that Mr. Williams went in had in its wake evidence that could be tied to one of the victims of the shooting. Yes. And there is no question if the if the issue was, was there overwhelming evidence that Mr. Williams was involved in the episode all, you know, altogether? The answer would be yes. But the testimony that he provided, his narrative of innocence, was that he was not in the apartment. But there's also a percipient witness, whatever may be the condition of Mr. Crawford. We we have a percipient witness identify Mr. Williams. You do. And frankly, if the court thinks that Mr. Ortiz testifying by cell phone because of the wound to his head, shot in the head, who gives testimony that we know is contradicted squarely by the DNA evidence, I would submit he is not a reliable witness. The only other evidence in the case is the co-defendant. And of course, we know co-defendants by nature will seek to absolve themselves by by blaming others. And that's the Lee v. Illinois case. So I would respectfully submit that while there's lots of evidence that Mr. Williams was up to no good that day, there is really no. Well, I'm not even saying not up to no good, because that was his defense. I mean, he's the whole defense was I'm a drug dealer. Yes, I'm a druggy. I'm a drug dealer. Have been for a long time. I've been a criminal since I was 16 years old, et cetera, et cetera. I get the point. I'm sorry. I said I get the point. Well, I mean, he and his lawyer said it. So but but in any event, you have a percipient witness here who never deviated from the point that Mr. Williams was the person who shot him. Is that right? Yes. And he was just wrong. He was wrong about what he saw. And we know that. Well, he he he may have been wrong. According now, I'm talking about the record, according to the evidence, you may have been wrong about the order of who was shot when based upon some expert testimony. Right. Yes. Whether he was shot first or Ortiz was shot first and the other way around. Right. Yes. But he never deviated from the fact that William shot. That's a big, a big problem, though, for the prosecution. I would submit the fact that, you know, this witness who's saying, yeah, he shot me gets it completely wrong in a very. And it wasn't a problem for the jury. Well, that's because we had, among other things, the co-defendants criminal information. Right. And I mean, that's the harm here. But for that constitutional violation, the evidence would have been significantly less damning on the issue of did Mr. Williams shoot and did Mr. Williams have an intent to kill when he went in to do the drug deal? The only evidence of that is the co-defendant and Mr. Crawford. Do we know when the charging document was reintroduced to the jury during deliberations? Yes, we roughly a time. I think it was rather early on. I don't have the exact time, but it was in one of these situations where they read it and then they came back five minutes later or I would have pointed that out. But they didn't ask it to be read again. They certainly asked it to be read. I think it was one of the first things they it was very shortly after they started deliberating. They said, we want to read the stipulation as what Mr. Williams, Mr. Cannon did. And that's when it was read. Harden. We have to assume that the jury considered. Oh, yeah, response. Yeah, I would I would think I think, you know, you would have to assume that anyway, given that it was evidence in the case, the fact that it was read to them a second time is simply further confirmation of that fact. Harden, the co-defendant, was also the getaway driver, right? I'm sorry, your honor. Harden was the getaway driver. Yes. And who did she have a relationship with? She was purportedly Mr. Williams' girlfriend. Didn't he concede that? Can you testify to that? I don't remember if he conceded it, but I don't know that it was particularly in dispute. OK. They drove up together. So she's driving the car and drives from the scene. In a reckless manner, she's the one who has the relationship with Williams. She there's nothing that I am aware of. She in the record that said she had a relationship with Cannon. So we have also and what I'm doing is reciting some of the evidence that would seem to support or at least go into the equation of whether or not there was harmless error here. We have flight on the part of Mr. Williams, flight for a long time. Well, there's flight down here in this city. The flight can be explained by his guilty conduct aside from the murder, right? I mean, the fact that he was involved in a drug deal where they were shooting would be sufficient motivation for anyone in that situation to flee. I don't know that that's particularly probative. It's weak evidence flight. And the items that were taken from Mr. Crawford that are found screwed along the way. Yes. Including his watch, which interestingly, his testimony indicates that his watch was stolen that day. But he does not know who took his watch, which to my mind means the watch was taken after the shooting. He was completely unconscious, out, unable to see anything. And that's why his testimony that he saw Mr. Williams shoot Ortiz is is not believable. There was there had been historically a pretty good relationship between Mr. Crawford and Mr. Williams, correct? Yes. Good friends. Yeah. Why would why would Crawford finger Williams for such a serious thing as these two shootings? If Williams were not on the scene there in the apartment, as opposed to outside, as he is. Yeah. Well, I mean, one could flip that around and say, why would Mr. Williams have shot his good friend? But leaving that aside, I think the answer is I don't think Mr. Crawford was being malicious. I just think he was a severely brain damaged individual. I was looking in the record. I'm not sure it's in there. But there was an evaluation done by a mental health professional at the request of the district attorney's office to evaluate Mr. Ortiz for competency to testify. That's how badly he was injured. When the police showed up on the scene, they described him as being in grave condition. And the medical expert, the doctor said he'd only ever seen two people survive, I think, with a wound of this kind. As serious as this is, and described the brain tissue extruding from his skull as akin to toothpaste coming out of the tooth. Yeah, it was pretty bad. Yeah. And, you know, look, I always like to play doctor, but, you know, I'm not one. And I can only assume, based on a description of his condition, the mental health evaluation that was performed on him, that he was just not a reliable witness. And, you know, his inability to even speak at the time of trial, I don't think that was just because he had something wrong with his jaw. I mean, that was a brain thing going on, to use a medical term. So I just, you know, as I said earlier, if the court is confident in Mr. Ortiz, which I can't imagine you would all be, you know, the evidence is far from overwhelming on the critical issue of Mr. Williams' intent and whether he was present in the house at the time of the shooting. And I end it right at zero. Are there any other questions? Thank you. I appreciate it. And by the way, I like that side of the courtroom much better than that side. I don't get to sit there much. Thank you, Your Honors. Briefly, Your Honors, in rebuttal, I would note that Attorney Wiseman concedes that, yes, Mr. Williams was involved in this episode. The question was never presented to the jury who, in fact, pulled the trigger and fired the shot that killed Martiz Ortiz, who, in fact, pulled the trigger and shot the gun that grievously wounded Keith Crawford. So there's a concession right there. The guilt itself is so overwhelming. Now, one of the questions that Your Honors posed was the timing of when that information was re-read to the jury. At 2.33 p.m., the jury went out to deliberate. At 4.25, almost two hours later, there was a question. There was then a discussion in chambers and the information was then re-read to the jury. They came back the next day at 8.30 and started deliberations again. At 10.05, they had a question asking for an explanation of the different aggravated assaults that were charged, and that was then done. And at 1.22, they then returned a verdict of guilty. So the timing, there is a temporal dissociation there. It's irrespective of the timing, though, isn't it problematic that the jury fixed on the information in the first place and wanted to see it? I think the challenge for us as we now play armchair quarterback is, what was the jury thinking? We don't know that. No one has spoken to a juror and asked what role that played. We are now speculating. But again, the focus here, I believe, is ultimately the overwhelming evidence of guilt. There was pursuit from the scene. Evidence of guilt of being there. No, of participating. Well, but not of a conspiracy to commit murder. Akita Harden testified that approximately two weeks prior, Mr. Williams and she had actually had a discussion of robbing Keith Crawford. Right. She's the cooperating witness. Correct. The co-defendant who is at trial. She indicates that she and Williams had discussed whether or not they were going to rob him. And eventually, Williams stated to her that he wanted to that he wanted to rob and potentially take everything that Crawford had. So the idea that that there is not guilt, that there is not enough evidence here to overcome this notion of the Bruton violation is is incorrect. The guilt here is overwhelming. The pieces fell into place the way they should to prove guilt beyond a reasonable doubt. Again, the question wasn't who, in fact, pulled the trigger. It was a question of is the individual guilty of these crimes as a principal or accomplice? And the testimony. Both prosecutions were pursued with alternate theories of criminal liability. Right. Both Cannon and Williams. And and I I assume because it's not in the record that there were no special interrogatories as there rarely are in criminal cases. That went to the jury indicating whether he was a principal or an accessory. There were there were no special interrogatories. My understanding, again, having been outside the proceedings themselves, but having knowledge from the parties, ultimately, the belief of the Commonwealth was, in fact, that Eddie Williams was the shooter. He was the primary who was involved in the murder of Martiz Ortiz and the shooting of Keith Crawford. And as far as Keith Crawford goes, Keith Crawford identified Eddie Williams while he was in a rehabilitation hospital by pointing to him and picking him out of a lineup and then did the same in trial and testified, albeit via cell phone, inputting the information, identifying Eddie Williams as the individual who had shot Mr. Ortiz as well as him. Thank you very much. Thank you, judges. Thanks to both counsel and your arguments and briefing. We will take this matter under advisement. Have a good day.